In the Matter of ARTHUR L. REUTER, as Acting Commissioner of Investigation of the State of New York, Appellant. SYLVESTER COSENTINO, Respondent.

First Department, June 28, 1957.

*Abe Wagman* of counsel (*John R. Davison, Solicitor-General* and *Philip Watson, Assistant Attorney-General,* with him on the brief; *Louis J. Lefkowitz, Attorney-General*), for appellant.

*Irving Mendelson* for respondent.

*Edward H. Levine* for Association of Lawyers of the Criminal Courts of Manhattan and Kings County Criminal Courts Bar Association, *amici curiæ.*

BERGAN, J. This case strikes directly at a vital area in the lawyer-client relationship brought into focus by an unwarranted electronic penetration of a privileged professional conference. The problem is, since it has now become settled that the court will not restrain publication by members of a legislative committee of the intercepted lawyer-client conference (*Lanza* v. *New York State Joint Legis. Committee,* 3 N Y 2d 92), whether the lawyer will be required as a witness to implement and collaterally verify the information obtained by wrongful interception by testimony of professional acts resulting from the conference.

That the lawyer will not be compelled to testify to the actual communications between his client and himself has long been settled by the statutory and judicial policy of New York (Civ. Prac. Act, §§ 353, 354; cf. *Whiting* v. *Barney,* 30 N. Y. 330). And this protection against testimonial compulsion was expressly reaffirmed in *Lanza* v. *New York State Joint Legis. Committee.* The statute, as was there noted (p. 97), " seals the lips of the attorney ".

The rule against testimonial compulsion to reveal the communication between a lawyer and his client is a rigidly guarded policy. The privilege attaching to the relationship is protected by " a policy of strict inviolability "; and the failure of the privilege of communication between lawyer and client would " hamper the administration of justice " (*People* v. *Shapiro,* 308 N. Y. 453, 459). There the court held that the defendant in a criminal case could not be cross-examined on the trial about his conference with his lawyer on the subject of alibi witnesses. The statute should have " broad and liberal construction " (p. 458).

The right of a governmental unit to publish the product of a penetration of the lawyer-client relation, and to release confidential communications between them is, therefore, quite a different matter from direct compulsion against either the client or the lawyer to testify to the privileged communication itself.

The right of the citizen to the advice of a lawyer, and the protection afforded to consultation with him ought to be preserved even though modern electronics has provided a facile way of ascertaining and recording what is said between them.

The law does not lie helpless because there may arise ingenious facilities to circumvent its safeguards; it has ingenuity enough of its own to preserve rights which it regards important; and if the constitutional guaranty of the aid of counsel is to be of value, the court must afford to every man the right to talk to his lawyer with assurance that the lawyer will not be required or permitted to disclose what is said. The spirit in which this right is preserved is to be seen in *People* v. *Cooper* (307 N. Y. 253).

In the proceeding before us it is sought to punish the lawyer Sylvester Cosentino for contempt upon his refusing to answer questions in an inquiry by the Acting Commissioner of Investigation of the State of New York into the parole supervision of Joseph Lanza. The right of the acting commissioner to inquire into the parole of Lanza is not disputed; and it is undoubted. A professional consultation between Mr. Cosentino and Lanza was intercepted by electronic recording without knowledge of the attorney or the client. This is the same interception considered in *Lanza* v. *New York State Joint Legis. Committee* (*supra*).

The acting commissioner, who had no responsibility for the wrongful penetration of the lawyer-client conference, has nevertheless cast several questions addressed to the lawyer in a mold reflecting the information obtained and made available to him through the intercepted conference recording.

The lawyer was not asked about the words of the consultation itself. The electronic recording made such questions superfluous. He was asked, rather, questions based on the wrongful interception—and reflecting it. The court at Special Term refused to adjudge the lawyer in contempt. The acting commissioner appeals. We think that the testimony which is designed to reflect and act out the subject matter of the privileged consultation ought not be compelled.

To the extent that information thus wrongfully obtained of the actual professional consultation becomes a guide and a beacon to examination, the lawyer ought not be required to disclose actions with third parties within the professional ambit; or professional steps taken, so closely related to the consultation as, in effect, to amount to a disclosure of it.

We think the issue should be resolved as favorably as may be possible to protection of the integrity of the lawyer-client

relationship. When the professional acts of the lawyer, prior or subsequent to the professional consultation, mirror the privileged communication and tend to uncover it, they should be put squarely within the area of matters with a client which a lawyer will not be compelled to disclose.

We thus put the product of the electronic penetration of the privileged consultation in the same place we would put the narrative of an eavesdropper at the lawyer's keyhole. Disclosure cannot, perhaps, be prevented; but also the lawyer's testimony ought not be compelled to import authenticity to this disclosure by collateral proof.

This requires a careful judicial supervision of what testimony may or may not be compelled of a lawyer relating to his professional work which reflects on the client consultation. It is not feasible to lay down all the precise kinds of questions that may be permitted or excluded within this framework, but the general principle ought to be stated clearly enough to be workable in circumstances where there has been wrongful penetration of the privileged communication.

The rule we announced is based on a policy designed to limit the ravages of intrusion into the relationship; and the special restrictions on testimonial compulsion are to be viewed with the intrusion in mind. Therefore, questions which might usually be deemed harmless enough, are, in these special circumstances, to be excluded where the lawyer asserts they stem from the intrusion and reflect the privileged communication.

Where there has been a flagrant and unprecedented violation of the privilege, commensurate and extraordinary protection against compulsion of testimony to fill in collaterally supporting proof of what the conference disclosed is warranted. This is in harmony with the spirit in which the privilege has been preserved.

Where, for example, following conference with a client, the lawyer consults another lawyer about his client's matter and asserts that this derives from the privileged communication, disclosure ought not to be compelled.

Thus the question asked of the respondent concerning a conversation with a lawyer who had previously represented the client in his criminal case: "Did you visit a lawyer named Joseph Guerin?", ought not be compelled where it is asserted by the attorney, as it was in the affidavit of the respondent at Special Term, that "that question stemmed from a confidential talk had with his client" and where, as here, facts of wrongful penetration of the professional consultation are fully developed.

We think the Special Term was justified in refusing to punish the lawyer for contempt because he would not answer that question, or the somewhat similar questions whether he suggested to Mr. Guerin that he talk with any other person or whether he sent any other person to talk with Mr. Guerin. The remaining questions are not markedly different in effect.

The order should be affirmed.

BOTEIN, J. P., RABIN and McNALLY, JJ., concur.

Order unanimously affirmed.